MOUNT PROSPECT STATE BANK, Trustee, Plaintiff-Appellant, *v.* THE VILLAGE OF KIRKLAND, Defendant-Appellee.

Second District   No. 2—83—0779

Opinion filed August 17, 1984.

Charles L. Fierz, of Sycamore, for appellant.

William D. Moore, Jr., and Gary L. Ecklund, both of Schlueter, Ecklund, Olson, Barrett & Moore, and Richard K. Van Evera, of Barrick, Jackson, Switzer, Long & Balsley, both of Rockford, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Mount Prospect State Bank, as trustee under a land trust, appeals from an order of the trial court granting the motion to dismiss of defendant, the village of Kirkland. Plaintiff raises the following issues on appeal: (1) whether it was a denial of equal protection to deny plaintiff refuse collection service where the service was pro-

vided to other village residents and paid from general tax revenues; (2) whether monies paid by plaintiff to provide its own service or tax monies retained by the government without providing the service are recoverable as compensatory damages; and (3) whether punitive damages are recoverable for defendant's exclusion of plaintiff from refuse collection.

The facts alleged in plaintiff's complaint will be taken as true for purposes of the motion to dismiss. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 284, 402 N.E.2d 599.) Plaintiff owns a parcel of property in the village of Kirkland known as Congress Lake Estates, which contains 70 to 77 mobile homes. This is the only mobile home park in the village and only plaintiff, not the individual mobile homeowners, is a party to this suit. Defendant, pursuant to a contract, commencing May 1, 1982, and terminating April 30, 1985, with Saturn Disposal Systems, Inc. (Saturn), provides refuse collection service to residences within the village. Defendant pays for these services with general village tax receipts. The contract provides, in pertinent part, that Saturn "shall make one weekly unlimited pick-up of garbage *** from each residence in the VILLAGE." The contract defines "residence" as including "each occupied single family dwelling and each occupied unit or apartment situated in a multiple family apartment building or separate apartments in single family dwellings converted to multiple family use." "Residence" expressly does not include "mobile homes located in Congress Lake Estates." The contract specifies that there are 317 residences in the village as of the date of the contract.

In its three-count amended complaint plaintiff sought an order of *mandamus* directing defendant to provide plaintiff with the "same refuse collection that it affords other taxpaying residential property owners," compensatory damages for denying plaintiff this service for 19 years, and punitive damages under "Title 42, Section 1983, U.S. Code." Essentially, this complaint alleged that plaintiff was the owner of real estate containing "70-77 residential homes"; that defendant supplies refuse service in the village which it pays for from general village tax receipts; that the contract for refuse service indicates a "residence" for which this service is provided does not include mobile homes located in "Congress Lake Estates"; that such a contract violates plaintiff's right to equal protection, as it arbitrarily classifies types of property and excludes plaintiff from a governmental service provided to others in the village; and that plaintiff has been discriminated against for 19 years, during which time it paid for its own refuse collection.

In its order granting defendant's motion to dismiss, the trial court

noted that the parties had agreed that plaintiff's facility was the only mobile home park in the village. The court concluded that while naming and excluding the mobile home park specifically in the contract might raise an equal-protection argument, the agreed fact was that this was the only mobile home park in the village and plaintiff was not being discriminated against with respect to any other such mobile home parks in the village. The court further found, *inter alia*, that it did not violate equal protection to exclude plaintiff's property from refuse collection services.

Plaintiff argues on appeal that it has been unconstitutionally denied equal protection of the laws because the defendant's refuse collection policy arbitrarily discriminates against mobile home parks. It maintains that the exclusion of its mobile home park from refuse collection unfairly classifies it with "second class status." Plaintiff claims no rational basis exists for treating it differently than other residential taxpayers and that this different treatment, which requires it to pay for refuse collection service through its payment of general property taxes without receiving the collection service provided to other village residents, is therefore a denial of equal protection. Plaintiff argues it is entitled to *mandamus* ordering the village to provide plaintiff with this service.

A government may "differentiate between persons similarly situated as long as the classification bears a reasonable relationship to a legitimate legislative purpose." (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578, 376 N.E.2d 1382.) The parties generally agree that the legislative classification here is created by the contract between defendant and Saturn and that the validity of this classification is governed by the law controlling classifications created by statute or ordinance. There is a presumption of validity of these legislative classifications, and the burden is on the party challenging the classification to establish its invalidity. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 122, 412 N.E.2d 151; *Hoskins v. Walker* (1974), 57 Ill. 2d 503, 508, 315 N.E.2d 25; *Szczurek v. City of Park Ridge* (1981), 97 Ill. App. 3d 649, 657, 422 N.E.2d 907.) Where no fundamental right or suspect class is involved, the classification "need have only a rational relationship to a legitimate State purpose to be upheld." *People v. Gurell* (1983), 98 Ill. 2d 194, 204, 456 N.E.2d 18; *Harrington v. City of Chicago* (1983), 116 Ill. App. 3d 137, 139, 452 N.E.2d 26.

No fundamental right to garbage collection exists (*Goldstein v. City of Chicago* (7th Cir. 1974), 504 F. 2d 989, 991), and mobile home park owners are not among the "suspect" classes recognized by the

courts. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 119-20, 412 N.E.2d 151; *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 61, 36 L. Ed. 2d 16, 59, 93 S. Ct. 1278, 1311 (Stewart, J., concurring).) Thus, the classification challenged here will be upheld if it bears a rational relationship to a legitimate governmental purpose. (*People v. Gurell* (1983), 98 Ill. 2d 194, 204, 456 N.E.2d 18.) If the court can discern any reasonable basis for the classification, it will be upheld. (*Harrington v. City of Chicago* (1983), 116 Ill. App. 3d 137, 139, 452 N.E.2d 26.) This test for constitutional validity is often referred to as the "rational basis" test.

It has been held that under the rational basis test, the court may, on its own initiative, and independent of the parties, articulate facts necessary to justify the classification. (*Szczurek v. City of Park Ridge* (1981), 97 Ill. App. 3d 649, 657, 422 N.E.2d 907; see *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 367 N.E.2d 1325.) The question whether a rational basis for the classification exists has been considered to be a question of law. (*Szczurek v. City of Park Ridge* (1981), 97 Ill. App. 3d 649, 657, 422 N.E.2d 907.) Thus, it is appropriate, on a motion to dismiss, for a court on its own initiative to consider whether a rational basis exists for the classification, which would overcome an equal protection challenge. (*Szczurek v. City of Park Ridge* (1981), 97 Ill. App. 3d 649, 657, 422 N.E.2d 907; *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 102, 405 N.E.2d 1256.) After considering the arguments of plaintiff and defendant and considering the record before us, we conclude that a rational basis for the classification exists here and that the trial court, therefore, properly granted defendant's motion to dismiss.

It has been held that a distinction between multiple-family structures and single-family residences may be made with a municipality providing garbage service to single-family residences while excluding multiple-family structures. (*Szczurek v. City of Park Ridge* (1981), 97 Ill. App. 3d 649, 659, 422 N.E.2d 907.) The reasons given in *Szczurek* included the "more demanding needs" of multiple-family structures and "the greater amount of refuse generated by them." (97 Ill. App. 3d 649, 656, 659, 422 N.E.2d 907.) Similar reasons can be conceived here. Plaintiff's property contains between 70 and 77 mobile homes. With such a large number of mobile homes existing on plaintiff's property, it is reasonable to conclude that the refuse collection needs of this property would vary significantly from the needs of other residents of the village. In fact, as of the date of the contract, there were only 317 residences in the village that would receive refuse pickup service. Including plaintiff's property with some 70 to 77 mobile homes in the

refuse pickup contract would substantially increase the amount of refuse to be picked up, resulting in a significant expense to the village. Also, greater flexibility and frequency of refuse pickup than the village could provide may be necessary to meet the needs of the residents of this mobile home park. (See *Szczurek v. City of Park Ridge* (1981), 97 Ill. App. 3d 649, 656, 422 N.E.2d 907.) Additionally, a mobile home park may provide greater problems of access for refuse trucks than residences located on city streets.

We further note the contract, by its inclusion of only residences, excludes commercial enterprises within the village from refuse collection service. Plaintiff's property, with its 70 to 77 mobile homes, has more the character of commercial property than it does residential, which we believe is a rational basis for a classification in view of greater refuse generally generated by a commercial enterprise.

Plaintiff's complaint only generally alleges an arbitrary classification and does not allege facts which would indicate that no rational basis for the distinction between it and residences in the village exist. It does not allege specific facts, for example, that apartment buildings with comparable numbers of units exist in the village and receive refuse collection service, or that other mobile homes similarly situated in the village receive the service. For the foregoing reasons, the presumption of validity of the village's actions has not been overcome, and a rational basis for the classification has been shown.

Plaintiff's reliance on *Montgomery v. City of Galva* (1969), 41 Ill. 2d 562, 244 N.E.2d 193, is misplaced. *Montgomery* dealt with a garbage service charge assessed against water users, some of whom did not receive garbage collection service. No such service charge is involved in this case.

Because we conceive facts that justify the exclusion of plaintiff's mobile home park from refuse collection, we hold that plaintiff's complaint, only generally alleging an equal protection violation, was properly dismissed. Since the other two issues plaintiff raises on appeal are premised on a holding that plaintiff was denied equal protection, they necessarily fail because of our holding that equal protection was not denied.

For the foregoing reasons the order of the circuit court of DeKalb County dismissing plaintiff's complaint is affirmed.

Affirmed.

UNVERZAGT and LINDBERG, JJ., concur.