THE ESTATE OF NAYMAT AHMED, A Minor, Plaintiff-Appellant, v. THE COUNTY OF COOK, Defendant-Appellee.

First District (2nd Division)   No. 86—57

Opinion filed August 5, 1986.—Rehearing denied September 3, 1986.

Leonard C. Arnold, Ltd., of Chicago (James H. Canel and Patricia N. Hale, of counsel), for appellant.

Winston & Strawn, of Chicago (Richard J. Brennan and Paul P. Biebel, Jr., of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

After a jury trial on the sole issue of damages in a medical-malpractice suit, an $8,126,711 verdict was returned and judgment entered against six doctor defendants and against Cook County, which was responsible for the operation at the hospital in which the incident occurred. Cook County paid the judgment, and the probate court determined the judgment interest rate to be 6% as specified in the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1303). Plaintiff appeals that the individual defendants are liable for judgment interest at the rate of 9%.

On June 22, 1979, a medical-malpractice suit was filed in the circuit court of Cook County on behalf of Naymat Ahmed by his father and next friend, against the Health and Hospitals Governing Commission of Cook County, a/k/a Cook County Hospital, and against six individual doctors. The complaint alleged the doctors were employed at the hospital and had treated Naymat Ahmed in a negligent manner. An amended complaint then substituted the Northern Trust Company as special guardian for Naymat Ahmed in place of his father. A jury returned a $8,126,711 verdict, and judgment was entered in that amount against Cook County, successor to the governing commission, and against the individual doctors. We affirmed the judgment in *Northern Trust Co. v. County of Cook* (1985), 135 Ill. App. 3d 329, 481 N.E.2d 957.

On October 15, 1984, the Cook County board approved a resolution authorizing and providing for the execution of an appeal bond. In the bond the board agreed to pay, on behalf of the doctors, applicable post-judgment interest. The resolution authorized County Board President George W. Dunne to execute with the Continental Bank an agreement which pledged the full faith credit and resources of the county to repay Continental, with interest, for drawings made upon a Continental ir-

revocable standby letter of credit. The resolution also approved the form of the letter of credit. We approved a $10 million appeal bond on October 25, 1984, and on November 5, 1984, Continental issued a $10 million letter of credit naming the Northern Trust as beneficiary.

On December 31, 1985, the Northern Trust made a demand upon Cook County for payment of $9,296,958.14 and presented to Continental a sight draft in that amount drawn upon the letter of credit. Continental paid the $9,296,958.14, which computed interest on the judgment at the rate of 9%. Cook County contested $386,074 of the payment, which was the difference between interest computed at 9% and interest computed at 6%. On January 21, 1986, we ordered a stay of a trial court order which had directed segregation of the $386,074. We further directed the trial court to resolve issues concerning the rate of interest to be paid on the judgment. On February 4, 1986, the trial court ruled that the proper rate of interest was 6% and ordered Northern Trust to return to Cook County $386,074 plus interest. Plaintiff appeals.

█ In various separate contentions, the Northern Trust argues that under section 2—1303 of the Code of Civil Procedure the doctors owe payment of the judgment at 9%. It urges that neither the doctors' relationship with Cook County as employees or insureds, nor the sources of their judgment payments relieves them from the obligation to pay at the individual 9% rate. We disagree.

Section 2—1303 of the Code provides in pertinent part:

"Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied or 6% per annum when the judgment debtor is a unit of local government, as defined in Section 1 of Article VII of the Constitution, a school district, a community college district, or any other governmental entity." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1303.)

In imposing a lower rate of judgment interest on governmental bodies than on other entities, the legislature rationally may have intended to lessen the burden on taxpayers who ultimately pay for judgments rendered against governmental entities. *Harrington v. City of Chicago* (1983), 116 Ill. App. 3d 137, 139, 452 N.E.2d 26.

In the instant case, the judgment debtor, Cook County, a unit of local government, owed interest on the judgment at 6%. Cook County was also statutorily obligated to pay any tort judgment arising from acts of any employee acting within the scope of his employment. (Ill. Rev. Stat. 1985, ch. 85, pars. 9—102, 2—302.) Physicians employed at Cook County Hospital are employees within the statutory definition,

and the physicians here acted within the scope of their employment. (See *Zagar v. Health & Hospitals Governing Com.* (1980), 83 Ill. App. 3d 894, 899, 404 N.E.2d 496.) Indeed, the county acknowledged its duty to protect its employees from judgments stemming from acts committed within the scope of employment at Cook County Hospital, when the governing commission in 1974 and the county board in 1980 passed resolutions to indemnify and hold harmless employees of the hospital. Resolutions 74—HHGC—163, 80—R—251.

Further, the county evidenced its obligation to pay the judgment on behalf of itself and the individual doctors when it posted the $10 million appeal bond secured by the irrevocable letter of credit. Although the Northern Trust contends that the record fails to indicate that Cook County funds actually paid the judgment, County Board President Dunne was empowered to execute and deliver to Continental an agreement pledging county funds to repay the bank for drawings made upon the letter of credit. Defendants' request for approval of Cook County's appeal bond stated that Continental would issue its irrevocable standby letter of credit when the Cook County board approved a reimbursement agreement between Continental and the county. The letter of credit was in fact issued naming the Northern Trust as the beneficiary, and the Northern Trust successfully drew $9,296,958.14 on the letter of credit on January 6, 1986. We may presume that Continental issued the letter of credit and made the payment in reliance on a repayment agreement with the county. (*In re Shannon* (1977), 45 Ill. App. 3d 876, 879, 360 N.E.2d 433.) Consequently, we infer from the record that Cook County funds were used to pay the judgment. This being so, the trial court properly determined that the 6% judgment interest applies.

■ Finally, the Northern Trust contends that the doctrine of *res judicata* precludes Cook County from now litigating the judgment-interest-rate question because the matter could have been decided in the former suit. We are not persuaded. In that litigation Cook County sought a new trial and claimed error in evidentiary rulings, jury instructions, the damage award and prejudgment interest. The instant question became appropriate when the judgment became final and the Northern Trust collected upon it at the 9% interest rate.

Therefore, we affirm the order of the trial court holding that a 6% interest rate be applied to the instant judgment.

Affirmed.

BILANDIC, P.J., and HARTMAN, J., concur.